HACKETT *v.* HACKETT & a., *Trs.*

Specific performance of, an agreement to convey real estate devised in trust may be enforced when the will gives the trustee authority in his discretion to make such a conveyance, and the agreement itself appears to be a judicious exercise of the discretion conferred.

BILL IN EQUITY, for specific performance. Facts found by the court. William H. Y. Hackett devised real estate in Gilmanton and Belmont, and the debt due him from his brother, Charles A. Hackett, to his two sons, in trust, to be used as they might judge best for the benefit of his brother and his wife and children, with authority " to sell, allow him to occupy, or to convey a fee simple to him or his children," as his sons, knowing the object of the testator, might from time to time judge would best promote the comfort of his brother and his wife and children; or to rent the same, and from time to time appropriate the income as they might judge would best subserve the object of the trust. The devise was made subject to the condition that Charles A. Hackett and his children pay an annuity of twenty-five dollars to Mary J. Leighton, sister of the testator, during the term of her natural life, the real estate and debt from Charles A. being charged with the payment of the annuity.

Subsequently the testator executed the following codicil : " As it is now most likely that my nephew, Joseph Allen Hackett, will remain at home and upon the old Hackett farm, I make this codicil to my will for the purpose of so modifying the trust upon which I have given my real estate in Gilmanton or Belmont, that after the death of my brother Charles and his wife all said real estate shall be held in trust for the benefit of said J. A. Hackett, and if my sons or the survivor of them shall deem it best so to do, I do hereby authorize them to convey all my interest in said real estate, subject to the life estate of my said brother Charles and his wife, to said J. A. Hackett in fee simple forever."

Subsequently Robert C. Pierce was named as an additional trustee. The testator died August 9, 1878; William H. Hackett, one of the trustees, died September 24, 1891; Joseph A. Hackett, the testator's nephew, died in 1889; and the wife and other children of Charles A. Hackett have all deceased, leaving no lineal descendants.

September 24, 1892, the defendants, Frank W. Hackett and Pierce, surviving trustees, entered into a written agreement under seal with the plaintiff, Eliza A. Hackett, sister of the testator and of Charles A., and with her children, and with Mrs. Leighton and Charles A. Hackett, " for the purpose of applying the farm at Belmont to the support and comfort of Charles A. Hackett for the remainder of his natural life," whereby (1) the plaintiff, Eliza A., agreed to provide and furnish for her brother a comfort-

able home for his life, and her children agreed to furnish the same after the death of their mother; (2) Charles A. Hackett agreed to accept the transfer hereinafter stated as a full and complete discharge of the obligation of whatever kind upon the heirs of the testator to contribute to his support, and agreed to unite in giving a joint title in the premises to Eliza A. and her heirs; (3) the plaintiff agreed, upon the transfer of the title to her from the trustees, to pay them the sum of $107.78, expended by them on account of the title to the farm and the adjustment of the settlement; (4) Mrs. Leighton agreed to release the trustees from all obligation on account of her annuity charged on the farm, and to join in the deed in release thereof; (5) the trustees agreed to convey the farm to the plaintiff and her heirs in consideration of one dollar and of the agreement to support Charles A. Hackett. After the agreement was signed, the trustees appended over their signatures the following: " The deed to be a quitclaim of the interest of the estate of W. H. Y. Hackett."

Upon the execution of the agreement, the plaintiff entered into the possession and occupation of the farm, and has expended between two and three hundred dollars in its management and in taxes and repairs, and has assumed the care and support of Charles A. Hackett. A deed of release and quitclaim of the interest of the estate of W. H. Y. Hackett in the farm was prepared and submitted to the trustees to be executed by them, containing a release by Mary J. Leighton of any claim against the trustees or upon the land by reason of her annuity charged thereon, and executed by her October 19, 1892. The defendants declined to execute the deed, and the plaintiff brought this bill to enforce specific performance of the agreement.

*J. Albert Brackett* (of Massachusetts) and *Calvin Page*, for the plaintiff.

*Frink & Batchelder* and *Frank W. Hackett*, for the defendants. 1. The agreement is to convey the farm. The quitclaim mentioned in the addendum is of the interest of the estate of W. H. Y. Hackett, not of the interest held by the trustees. The codicil revoked the power in the trustees to convey, should they think it best, to Charles A. Hackett, or his children, in fee simple. This power once gone, never returned. In its place is conferred a power to convey in fee to J. A. Hackett. Each of these powers is altogether discretionary with the testator's trustees. He intended to provide against the future. Circumstances might render it just and proper that the testator's heirs enjoy the estate, after it had fulfilled its purpose as a home for his brother and nephew.

It seems clear the testator meant that his nephew should enjoy exactly the same estate in the land that Charles A. and wife were to have, viz., a life estate. If, however, the trustees should

think best at any time to terminate the trust created in behalf of J. A. Hackett, they were empowered to do so by conveying to him a title in fee simple. The death of the son before his father did not operate to enlarge the estate theretofore enjoyed by Charles A. Hackett. Hence when the trustees entered into an agreement to convey the " farm," or to quitclaim to the plaintiff " the estate of W. H. Y. Hackett " in the same, they were inadvertently exceeding their powers. Such an agreement equity will not·compel them to carry out.

2. But the plaintiff says the deed is to be simply a quitclaim; and if the trustees cannot convey the farm, they can at least be made to quitclaim their interest as trustees. It is a sufficient reply to say that Mrs. Leighton's signature has been obtained to no such conveyance as that now suggested by the plaintiff. The bill was brought to compel the trustees to execute a deed purporting to carry the fee to the plaintiff.

3. If the contract is one the defendants can call on the court specifically to enforce, it does not follow that the plaintiff is entitled to the same remedy. *Eckstein* v. *Downing*, 64 N. H. 248. One important requisite to sustain such a bill is, that the mutual enforcement of the contract *in .specie* be practicable. Adams Eq. 80. The bill emphasizes the fact that Charles A. Hackett is aged, infirm, and threatened with blindness. In order to use the farm for his benefit, however, it is by no means necessary that the trustees convey the fee to the plaintiff, or that Mrs. Leighton surrender her right to the annuity. The plaintiff and her children agree to "provide for the said·Charles and furnish him a comfortable home for his life."

To provide for an aged and nearly blind man is to take personal care of him. To furnish a comfortable home is to undertake to do that for which there is no standard of measurement. To ascertain from day to day whether the care is duly administered and the comforts of home tendered, is a procedure that a court of equity may well decline to enter upon. The contract resembles the engagement passed upon in *Marble Co.* v. *Ripley*, 10 Wall. 339, 358, where the duties were " continuous, involving skill, personal labor, and cultivated judgment," and Mr. Justice *Strong* said,—" The court cannot superintend the execution of such a decree. It is quite impracticable." See, also, *Port Clinton Railroad Co.* v. *Railroad*, 13 Ohio St. 544; *Ikerd* v. *Beavers*, 106 Ind. 483, 486; *Grimmer* v. *Carlton*, 93 Cal. 189; *Wright* v. *Pucket*, 22 Grat. 370, 377.

SMITH, J. Did the codicil revoke the power given the trustees in the will to sell the land or to convey it to Charles A. Hackett? The purpose of the testator in the codicil was to prefer Joseph to the other children, as the child for whom the farm should be held in trust after the termination of the two life estates, in case he should be then surviving; and this preference was founded on

the probability that he would remain at home upon the farm with his parents. In the ordinary course of nature the child is expected to survive his parents, and the testator undoubtedly contemplated Joseph's surviving his father and mother. This also appears from the provision authorizing a conveyance to him subject to their life estates. The testator was of course aware that it was possible Joseph might not survive them; and it is not probable that the testator intended, in case he should not, a devise defeasible upon the termination of the two life estates. If it was intended to revoke the power to sell or to convey to Charles given in the will, we should expect he would have made some other disposition of the land upon the death of Joseph before that of his parents. In the absence of any express revocation of the authority to sell, we think the testator did not intend to revoke the power given to the trustees in the will.

The trustees, then, having authority to sell, were authorized to use their judgment or discretion, for the comfort of the beneficiary, whether to sell to a third person, to convey to Charles, to allow him to occupy the farm, or to rent it to others and appropriate the income to his use. Authority to sell includes authority to convey. The children being dead, it is no longer possible to convey to them. The trustees in the discretion vested in them have entered into a written agreement with the plaintiff to convey the farm to her, in consideration of her agreement to furnish Charles a comfortable home during his life. Her four children agree to perform her agreement in case Charles shall survive her. He accepts the transfer for his support as a full satisfaction of his claims under the will, and is ready to unite with the defendants in the conveyance of the farm to the plaintiff. Mrs. Leighton is ready to discharge the trustees from all obligation on account of her annuity, and to join in the deed in release thereof. The plaintiff offers to pay to the trustees the amount expended by them ($107.78) on account of the title to the farm and of the adjustment of the settlement. It thus appearing that all parties interested assent to the proposed transfer of title, the discretion exercised by the defendants in entering into the stipulation is not open to review except for want of good faith, of which there is no suggestion. They had the power to enter into it. That it was a wise arrangement to make for the support of the *cestui que trust*, and a judicious exercise of the discretion vested in them, seems clear, and there is no suggestion to the contrary. It has received the assent of Charles and of Mrs. Leighton, and there is no suggestion of fraud or mistake.

The contract being one which the defendants had the power to make, the discretion vested in the defendants appearing to have been judiciously exercised, and the plaintiff standing ready to perform it and having already entered upon its performance, the prayer for specific performance should be granted.

The difference between the agreement of the defendants in the body of the contract " to convey the farm," and their agreement in the addendum to quitclaim "the interest of the estate of W. H. Y. Hackett," is more fanciful than real. The interest of the estate of the testator in the farm was the farm itself at the time of his decease.

The claim of want of mutuality in the remedy is not well taken. No reason occurs to us why the defendants could not maintain a bill to compel the plaintiff to accept a deed and perform the contract.

The contract is not open to the objection that it is an engagement which a court of equity will not enforce because it is " continuous, involving skill, personal labor, and cultivated judgment." The trustees are not charged by the will with the duty of providing for the support or comfort of the cestui que trust.

A decree for a conveyance to the plaintiff to have and to hold in fee, subject to and charged with all the rights secured to Charles by the testamentary provisions for a home, also subject to Mrs. Leighton's lien for her annuity, will answer every objection made by the defendants.

*Decree for the plaintiff.*

CLARK, J., did not sit: the others concurred.