No. 13,632.

STATE OF LOUISIANA EX REL. HYPOLITE RIVOIRE VS. HON. JOHN ST. PAUL, JUDGE, ETC.

### SYLLABUS.

1. The effect of the service of a writ of *certiorari* is to render void every act which has been subsequently performed by the Judge to whom it was directed. If, when the Supreme Court, or one of its judges, causes a writ of *certiorari* to be issued to an inferior court, judgment has been already rendered and execution sued out in the court below, the Supreme Court, or

the justice directing the issuing of the writ, may arrest the execution by enjoining the party suing it, and the party charged with it, to proceed no further until the validity of the proceedings has been pronounced upon. Such an order in no sense, is a judgment requiring for its validity the concurrence of three judges under Article 89 of the Constitution. The order operates a suspension not a reversal of the proceedings below. When the execution consists in the actual imprisonment of the relator who has obtained the writ, it, in proper cases, can only be made effectual by the temporary release of the relator. (State ex rel. Behan vs. Judge, 35th Ann., 1075; Constitution of 1898, Articles 93 and 94, C. P. 130, 863, 866, 877.)

2. A court is not authorized to sentence a party found guilty by it of contempt of court, to pay a fine of two hundred and fifty dollars, and in default of payment of the fine to an imprisonment of ten days. Such a judgment is illegal and must, on *certiorari*, be set aside, leaving to the court below the duty of rendering a new judgment. C. P. 864.

ON APPLICATION for Writs of *Certiorari*, Prohibition and *Habeas Corpus*.

*Robert J. Maloney* for Relator.

*Frank D. Chretien* for Respondent.

The opinion of the court was delivered by

NICHOLLS, C. J. Relator's prayer for the writs sought by him was based upon allegations that, in the proceedings entitled Mrs. Hypolite Rivoire vs. H. Rivoire, her husband, No. 62,060, of the docket of the Civil District Court, for the Parish of Orleans, petitioner was sued by the petitioner therein, his wife, for a separation from bed and board. That pending these proceedings, petitioner was served with a rule to show cause why he should not pay alimony to his wife, which matter, upon being submitted to the court, was adjudicated, and relator ordered to pay alimony at the rate of sixty dollars per month.

That on July 3, 1900, plaintiff filed a rule against relator, alleging that the said alimony had not been paid, and ordering defendant to show cause why he should not be punished for contempt, and incarcerated in the parish prison. That the said rule came up for trial on August 8th, 1900, before the Hon. John St. Paul, judge of Division "C" of the Civil District Court for the Parish of Orleans, acting for the Hon. T. C. W. Ellis, Judge of Division "A" of the Civil District Court for the Parish of Orleans, absent on leave.

That at the time of the said suit, the said court issued an injunction

restraining the defendant herein "from disposing of the following property, to-wit:  On Tchoupitoulas street, between State and Webster streets, in this city, and any and all other property belonging to the community existing between yourself and your wife, Mary Surginet (the plaintiff), and you are to so remain enjoined and restrained until further order of this court."

That on the trial of the said rule for contempt, he was placed upon the witness stand by order of the judge of said court, and after being interrogated, testified that he was without means with which to pay said judgment for alimony, and that it was impossible for him to realize upon any of his property for the reason that he was enjoined by the said court from disposing of or in any manner alienating the same. That said injunction was sued out and granted on the petition of his said wife, the mover in said rule.

Relator further testified that he had given to his said wife for support of herself and her children, the business formerly conducted by him in this city, on Tchoupitoulas street, between State and Webster streets, to-wit:  that of gardener, and that, notwithstanding the said testimony, no other proof of any other kind having been offered, he was adjudged guilty of contempt by the said judge, and fined the sum of two hundred and fifty dollars ($250), in addition to the said alimony, and, in default thereof, that he be confined in the parish prison of this parish for the term of ten days.

That the action of the said judge was arbitrary, illegal and uncalled for, and that the statutes of Louisiana expressly prohibit imprisonment for contempt in the case where the party is without the means to pay the said alimony.  That by virtue of the said judgment of the said judge he is now confined in the parish prison, in the custody of the criminal sheriff for the parish of Orleans, relator annexing a duly certified copy of the said judgment together with the testimony taken on the trial of the said rule.

That he cannot, in the ordinary course of proceedings, obtain any relief, and he is compelled to avail himself of the supervisory jurisdiction of the Supreme Court.

That the said judgment and commitment are absolutely null, void and of no effect, for the reason that same is not signed by any judge, is not addressed to any officer, has no caption, and does not in any manner conform to the requirements of the law.  That the said commitment is

nothing but a judgment on the rule, and the certified copy thereof is all that the criminal sheriff for the Parish of Orleans has for his authority in the retention of relator.

That the civil sheriff for the Parish of Orleans is ordered to take relator into custody and to deliver him into the charge of the criminal sheriff for the Parish of Orleans, and there is no law nor warrant for any judge to commit him to the custody of one officer, to be by him turned over to the custody of another official.

That in the rule filed by his wife for contempt, no fine of any sort is prayed for, and the said judge of the said court had no right to inflict upon relator a greater fine than that which is prayed for by the mover in the rule.

That according to Section 1013 of the Revised Statutes of this State, the said commitment must be "made out by the judge and shall be signed by him, ordering the sheriff to keep the person accused in safe and sure custody until delivered by due course of law, and shall substantially set forth the nature of the offense of which said person is accused, which commitment shall be sufficient warrant and justification to the sheriff or his deputy for the detention and imprisonment of the person so charged."

That by Art. 131 of the Code of Practice "The judges of the Supreme, District and Parish Courts have power to punish all contempts of their authority by a fine not exceeding fifty dollars and imprisonment for a period not exceeding ten days for each offense of that kind", which Article was amended by Act No. 190 of 1894, which merely adds the following: "Provided that no publication out of court shall be considered to be a contempt."

This petition was addressed to the Chief Justice and to the Associate Justices of the Supreme Court.

The following order was rendered upon it:

"Considering the foregoing application and the law, it is ordered that the provisional writs of *certiorari* and prohibition prayed for be granted and that same operate as a restraining order *pendente lite*: and that writs be made returnable to this court, on the first Monday of November, 1900, or otherwise according to law.

"It is further ordered that the writ of *habeas corpus* be granted and made returnable *instanter* before any justice of this court.

"Done and signed officially this the 9th day of August, 1900.

(Signed)   "L. B.. WATKINS,

*"Presiding Justice Supreme Court, La."*

Complying with this order a writ of *habeas corpus* was issued and under it, the criminal sheriff of the Parish of Orleans produced the body of the relator, together with the following return:

"In obedience to writ of *habeas corpus,* issued herein I have this day produced the body of Hypolite Rivoire before the Hon. F. T. Nicholls, Chief Justice Supreme Court, State of Louisiana, at Thibodaux, La., on August 10th, 1900, and hereto annex and make part of this return the commitment No. 62,060, Civil District Court, Div. A, Parish of Orleans, and also a copy of order of Supreme Court dated Aug. 9th, 1900, and submit the matter to the judgment of the court."

The paper referred to as the commitment was as follows:

"The rule for contempt filed in this case came up for trial this day, present Frank D. Chretien, Esq., attorney for Mrs. Rivoire, plaintiff in rule, and Robert J. Maloney, Esq., attorney for defendant in rule: Hypolite Rivoire, himself present in court, at the trial hereof, when after hearing pleadings, evidence and counsel, the law and the evidence being in favor of mover, and for the reasons orally assigned by the court.

"It is ordered that said rule be made absolute, and proof having been made that said Hypolite Rivoire refuses to pay to Mrs. Hypolite Rivoire, the amount of alimony decreed by the court that he was condemned to pay to her.

"It is ordered, adjudged and decreed that the said Hypolite Rivoire be, and he is hereby decreed to be in contempt of this Honorable Court and condemned to pay a fine of two hundred and fifty dollars, and in default of the payment of said fine the civil sheriff for the parish of Orleans is hereby ordered to take the said Hypolite Rivoire into custody and deliver him into the custody of the criminal sheriff for the parish of Orleans, to be by said criminal sheriff confined within the

walls of the Parish Prison of Orleans, during the term of ten days from the time of delivery to him of the said Hypolite Rivoire.

"And this will be his warrant for so doing, of which he will make due return.

"JOHN ST. PAUL.

"New Orleans, August 8th, 1900."

The following order was thereupon rendered:

"In view of the order rendered by Associate Justice Watkins, ordering that writs of *certiorari* and prohibition issue herein returnable to the Supreme Court on the first Monday of November, 1900, or otherwise according to law, and that said order operate as a restraining order *pendente lite;* and in view of the fact that it has been made to appear by the return of the sheriff herein, that notwithstanding said order the applicant, Hypolite Rivoire, is imprisoned in the Parish Prison of the parish of Orleans under a commitment in execution of the order of court, whose validity and legality is called in question, and ordered to be determined under the writs ordered, it is ordered that Remy Klock, criminal sheriff of the parish of Orleans, release the said Hypolite Rivoire from his present imprisonment under said commitment, and for so doing the present order will be the warrant.

"This done and signed at chambers, at Thibodaux, Louisiana, August 10th, 1900.

(Signed) "FRANCIS T. NICHOLLS, *Chief Justice.*

On the 20th of November the district judge sent up the record in the case of Mrs. Hypolite Rivoire, accompanied by the following return with exceptions:

Relator excepts and submits that before any further proceedings be had in the matter of the *habeas corpus* proceedings which had issued, the relator should be returned into the custody of the sheriff of the parish of Orleans, under the commitment herein issued, because the relator having been committed by a court of superior jurisdiction, the commitment should not have been set aside, nor the relator released, except by decree of this Honorable Court, concurred in by three of the justices thereof or of judges called for that purpose, as the case may be (Constitution, Art. 89), and on the face of the papers herein, it appears that no such concurrence was had.

But should your Honors hold otherwise, then this respondent says that he has no further return to make to said writ of *habeas corpus,* for this, that he has not now and never had in his custody, the body of relator, but that, having made out and signed a commitment of said relator, to the Parish Prison, he delivered the same to H. B. Mc-Murray, civil sheriff of this parish, for execution, and knows no more thereof, than what is shown by the return of said officer thereon, by the return made by Remy Klock, criminal sheriff of this parish, to the writ of *habeas corpus* herein issued, and the action of his Honor, the Chief Justice, thereon, whereby it appears that the body of said relator was duly produced before the Chief Justice, by whom the said relator was released.

Wherefore relator being no longer now either in the actual or constructive custody of any person, respondent submits that said writ of *habeas corpus* should be dismissed.

And should your Honors so hold and said writ of *habeas corpus* be dismissed, then this respondent excepts and submits that no further return should be required of him to the writs of *certiorari* and prohibition herein issued, for this, to-wit: That said writs were herein issued out simply and solely, as auxiliary and supplemental to said writ of *habeas corpus,* and for the sole purpose of obtaining the same relief as therein prayed for, to-wit: The release of said defendant, which release can only be obtained by *habeas corpus.*

But, should your Honors hold otherwise, then this respondent submits that your Honors are without appellate jurisdiction in this matter and can not review the finding as to the facts herein, but at most can only enquire whether said facts constitute a contempt for which this court can punish. *Ex rel.* Phelps vs. Monroe, Judge, 45 A. 1265; *Ex rel.* Barthet vs. Judge, 40 A. 434; *Ex rel.* Brown vs. Judge, 36 A. 1114; *Ex rel.* O'Mally ·vs. Judge, 35 A. 1195.

And this respondent finds as the facts upon which the said relator was adjudged guilty of contempt, "That in a proceedings for a separation from bed and board, instituted by the wife of relator against the relator, before a competent court, said relator had been condemned to pay to his wife said alimony for her support at the rate of $60 per month, payable monthly, that said decree was still in force, and three installments of said alimony, amounting to $180, were due and unpaid, which said relator had failed and refused to pay; that at the time when

relator was condemned to pay this alimony, and at the time when the rule for contempt was taken, as well as at the time when said relator was adjudged guilty of contempt, he had in ready money and negotiable property means far more than sufficient to pay the amount of alimony then due and which, notwithstanding, he still refused to pay."

And your respondent submits that the aforesaid facts constitute a contempt of court. *Ex rel.* Huber vs. King, Judge, 49 A. 1503.

In any event, this respondent submits that the record of the proceedings had in said cause No. 62,060, and the oral evidence adduced on the trial of said rule for contempt (reduced to writing) and on file therein, fully justify the conclusion of fact reached by this respondent.

But should your Honors find otherwise, then this respondent submits that Act No. 169 of 1898 is unconstitutional, null and void:

Because the object thereof, i. e., to define what shall not constitute a contempt of court, is not expressed in the title thereof, which purports but to limit the power of courts to punish for contempt; and the statute being void the uniform jurisprudence of this State from time immemorial and up to the passage of said act, has been that the inability to pay at the time of the issuance of the order constitute no defense. *Ex rel.* Huber vs. Judge, 49 A. 1503; *Ex rel.* Hefner vs. Judge, 50 A. 557.

Wherefore respondent submits that under any circumstances said respondent was properly adjudged guilty of contempt.

And now respondent admits that by inadvertence, the fine imposed in the alternative exceeded what he is by law permitted to impose, but he avers that no relief was asked of him in time for any action on his part, his attention being called thereto only after the commitment had been made and signed and, at the very earliest, only when this respondent was notified of the intention of the relator to apply to your Honors for relief, which by the practice prevailing in this court and out of respect to your Honors, has always been accepted by the district judges of this city as withdrawing the whole subject matter from their jurisdiction pending the application to your Honors.

But your respondent further now submits that said excessive fine being imposed only in the alternative, and the said alternative of ten days' imprisonment being clearly within the power of this respondent to inflict, said relator has no grounds of complaint, nor on that account should the sentence be annulled in *toto,* for as the respondent might

have imposed the said last named penalty (imprisonment) without alternative, relator is in the position of complaining of the illegality of the alternative of a fine which he is not necessarily called upon to submit to in order to escape from the other alternative (imprisonment) which is clearly legal, a position which appears to this respondent unsound and untenable, for conceding the fine to be illegal, null and void, it is to be considered as not written and the sentence should be allowed to stand as one of imprisonment without alternative.

But should your Honors think otherwise, then, and in that case, this respondent submits that the relator should not be dismissed, but that the matter should be remanded to the judge of Division "A" of this court, to whom said cause belongs and for whom this respondent acted in his absence, in order that sentence may be imposed according to law. *Ex rel.* Taquino vs. Arnault, Recorder, 49 A. 104.

Respectfully,                JOHN ST. PAUL, *Judge.*

New Orleans, Nov. 2nd, 1900.


## OPINION.

In the return or answer of the district judge the action of the Chief Justice in directing the temporary release of the relator, is referred to. It is claimed that the commitment which the district judge, in this case, issued, should not have been set aside nor the relator released, except by decree of the Supreme Court, concurred in by three of the justices thereof, or judges called for that purpose, as the case might be. (Constitution, Art. 89.)

The release of the relator up to the present time is an accomplished fact (under that order) and the subject matter of the same calls for no decree of this court in the premises, but it may be well that this claim should be alluded to.

The district judge is in error in supposing that his order or decree rendered in the matter of relator's alleged contempt of court, has been set aside; it has been simply suspended until the legality of that order should be brought before us and determined under our supervisory jurisdiction. That particular issue is what we are now about to pass upon. Relator having applied for and obtained an order from one of the associate justices of the Supreme Court "for provisional writs of *certiorari* and prohibition—the same to operate as a restraining order, and

that the writs be returnable to the Supreme Court on the first Monday of November, 1900," the law itself fixed the result to follow from such an order and the proper course to be pursued in consequence thereof.

By Article 863 of the Code of Practice, "the mere service of the order to send up the record (by *certiorari*) renders void every act which may have been subsequently performed by the judge to whom it was directed or by his order", and by Article 866 of the same Code "when a court of competent jurisdiction issues a mandate for the purpose of inquiring into the validity of a proceeding in the last resort, if judgment has been rendered and execution sued out in the court below, it may arrest the execution by enjoining the party suing it and the officer charged with it to proceed no further until the validity of the proceedings has been pronounced upon, and this, under the same penalties which are inflicted for contempt of court."

The order of the Chief Justice was nothing more than a preliminary and temporary injunction against the continued enforcement of the order for relator's imprisonment and to become effective and operative called, of necessity, for his present release. To have postponed action until the Supreme Court could be brought together would have been to have given a right without any adequate remedy.

The district judge is in error in supposing that the order of the Chief Justice was in any sense, a "judgment" of the court, which required for its validity, the concurrence of three judges under Art. 89 of the Constitution. (State *ex rel.* Behan vs. Judges, 35 An. 1077.)

The authority for the issuing of the orders which were granted in this case will be found to have been conferred by Articles 93 and 94 of that instrument. By Article 94 it is declared that the Supreme Court shall have control and general supervision over all inferior courts, and that the court or any justice thereof shall have power to issue writs of *certiorari*, prohibition and *mandamus, quo warranto* and other remedial writs, and by Article 93 that the Supreme Court and each of the justices thereof shall have power to issue the writ of *habeas corpus* at the instance of any person in actual custody in any case where it may have appellate jurisdiction.

In addition to this, all judges possess the powers necessary for the exercise of their respective jurisdictions, although the same be not expressly given by law. (C. P. 130-877.)

The writ of *habeas corpus* was issued in this case in aid of the exer-

cise and enforcement of the supervisory powers conferred by Article 94 of the Constitution.

We now direct our attention to the contention made by the relator that the order or decree of the District Court under which he was suffering imprisonment was null and void, as being made in excess of the authority conferred by law upon the district judge. Reference to that order shows that therein relator was decreed to be in contempt of court and by reason thereof he was sentenced to a fine of two hundred and fifty dollars, and in default of payment of said fine, to be confined in the parish jail for ten days.

The district judge was without authority to impose that amount of fine. The penalty by way of fine for a contempt of court is fixed by Article 131 of the Code of Practice at fifty dollars.

Inasmuch as payment of such a fine could not be legally demanded of the relator, a decree ordering him to be imprisoned for not doing so was null and void, and an imprisonment for not making such payment was illegal and unwarranted.

We are not called on in this proceeding to examine into the question as to whether or not relator was guilty of a contempt of court in failing to pay the alimony which was decreed for him to pay to his wife.

In referring to the action to be taken by the court issuing a writ of *certiorari*, Article 864 of the Code of Practice directs that if, upon examining the certified copy sent up, it shall appear to the court issuing the mandate, that the proceedings are null and have not been sanctioned by the party complaining of them, it shall avoid the proceedings and direct the inferior judge to try the cause anew, in conformity with the provisions of the law.

In the present instance no complaint is made of the regularity of any of the proceedings in the case. The complaint urged is against the decree rendered and to that decree we confine ourselves, not going back of it.

For the reasons assigned, it is ordered, adjudged and decreed that the order or decree of the District Court complained of herein, be and the same is set aside, and that in the matter of the rule for contempt of court against relator, the situation be replaced to that existing just prior to the rendering of the decree herein set aside.